UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HATEM MORRAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 151 |
| | ) | |
| MICHAEL CHERTOFF, Director, | ) | |
| Department of Homeland Security, and | ) | Judge Nordberg |
| ROBERT S. MUELLER, III, Director, Federal | ) | |
| Bureau of Investigation, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

The United States of America, by Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, on behalf of defendants Michael Chertoff, Secretary, Department of Homeland Security, and Robert S. Mueller, III, Director, Federal Bureau of Investigation, hereby its memorandum in support of defendants' motion for summary judgment.

**Introduction**

Over the past several years in our district, the dockets of federal courts have become increasingly crowded with cases in which applicants for immigration benefits seek the assistance of the judiciary in moving their cases through the immigration system. The numbers of these mandamus cases have increased in a "post 9/11-world" in which the federal agencies entrusted with the duty of ensuring that the requirements for these immigration benefits are complied with have had to process a dramatically increased number of security checks through an already overburdened system.

As the number of mandamus cases has increased, so too has the frustration of the judiciary in dealing with these cases. For example, Judge Shadur recently denied the government's motion to dismiss a case, and cited the "endless stream of cases seeking the adjudication of applications for naturalization, all stemming from the appalling failure of the FBI to conduct and complete countless background checks of such applicants." *El Masri v. Dorchoff, et al.,* 07 C 5379, slip op. at 1 (N.D. Ill., February 25, 2008). Exhibit 1.

While these frustrations are understandable, concrete steps are being taken to address the security check backlog problem and it is important to note that this case (and El Masri's) is different from the overwhelming numbers of other immigration mandamus cases that appear on the dockets of this district. The plaintiff in this case, Hatem Morrar, asks this court to be the first in this circuit to take the step of entering judgment against U.S. Citizenship and Immigration Services ("CIS") and forcing CIS to adjudicate his naturalization application even though Morrar has not yet been interviewed. CIS has not yet interviewed Morrar because it has not yet received the results of the Federal Bureau of Investigation ("FBI") background check of Morrar. Immigration statutes and regulations prevent CIS from acting on *any* naturalization petition until it has received the results of the FBI's background check.

**Background**

Not all immigration mandamus cases are alike. Many of the mandamus cases filed in our district relate to applications for "adjustment of status" pursuant to 8 U.S.C. § 1255, in which plaintiffs have filed applications with CIS seeking to acquire permanent residence in the United States. In these cases, plaintiffs are alleging that a decision from CIS has been delayed for years in adjudicating whether they are entitled to a green card. The district courts have split as to whether

2

these lawsuits have merit, often in the context of ruling on motions to dismiss. As a practical matter, this dispute on adjustment of status cases may never have to be resolved in this circuit due to a CIS policy change that was recently announced. Under the policy change, CIS stated that it would adjudicate adjustment of status cases even if CIS had not yet received the results of the background check from the FBI. *See* Julia Preston, *Rules Eased to Expedite Green Card Applications,* New York Times, February 12, 2008. Exhibit 2. As a result of this policy change, this group of backlogged cases (thousands upon thousands) should dramatically diminish in number on the dockets of the district courts.

A second large block of mandamus cases involve "naturalization" applications that allege the district courts now have jurisdiction to adjudicate their cases under 8 U.S.C. § 1447(b). In these cases, plaintiffs claim that, because the individuals were interviewed more than 120 days ago, the district courts have *independent* jurisdiction to rule on the merits of their applications. However, these cases arose before a policy change was implemented by CIS in April 2006. At this time, the agency initiated a policy of not scheduling "naturalization" applicants for interview until the FBI name check was completed. Exhibit 3. Prior to April 2006, CIS interviews could be scheduled and conducted *before* the name check responses were received by the FBI. But the applications could not be approved until the results of the name check were approved. *Id.* The April 2006 policy now strictly complies with Congressional requirements and immigration regulations—CIS cannot adjudicate a naturalization application without the completion of an FBI criminal background check, and an applicant must not to scheduled for an interview until CIS has received a definitive response from the FBI. *See* 8 C.F.R. § 335.2(b).

In this district, most of these cases that triggered § 1447(b) jurisdiction have been resolved without filing formal motions.  This case, however, is part of a more narrow and recent group of cases in which plaintiffs are alleging that CIS is doing something wrong by following Congressional dictates and immigration law and adhering to the April 2006 policy. Based upon Morrar's perception that he has been waiting on adjudication of his application for an unreasonable period of time (Morrar filed his application in June 2006), he is asking that he be put in front of the line and moved ahead of those waiting with him by ordering that his background check be expedited.  Put another way, Morrar is asking that his FBI background check be expedited since CIS is precluded from interviewing him until after his FBI background check has been completed.

As a matter of law and policy, the court should not order the FBI to expedite Morrar's background check because:  (1) the court lacks direct jurisdiction over Morrar's application; (2) Morrar has failed to state a cognizable claim against either CIS or the FBI; (3) district courts lack authority to place a specific deadline on an FBI background check; and (4) taking Morrar's case out of line is patently unfair to those immigrants who have been waiting longer than he has.

Furthermore, this court has directly dealt with the issue of the timing of FBI name checks. In *Antonishin v. Keisler*, No. 06 C 2518, 2007 WL 2788841, at *5 (N.D. Ill. September 20, 2007), Judge Grady found that:  (1) CIS was prohibited from adjudicating an application prior to receiving the results of the FBI background check; and (2) the FBI has no plainly-defined and peremptory duty to complete name checks of naturalization applicants. Exhibit 4.  In addition, it should be noted that the claims of the plaintiffs dismissed in *Antonishin* were much stronger than Morrar's claims because the court could have directly taken jurisdiction over the case under 8 U.S.C. § 1447(b), which is not applicable in this case. *Id.*

4

Finally, Judge Conlon recently entered judgment for the government, following a bench trial in *Abdifatah Mohamed v. Dorochoff, et al.*, No. 07 C 3414, (N.D. Ill. March 17, 2008)(minute order), in a case alleging the same claims as Morrar. Exhibit 5.

### Facts

Morrar is a 25 year old native of Palestine and citizen of Jordan. Defs. SMF ¶ 1.[1] Morrar became a Legal Permanent of the United States on September 1, 2001. *Id.* He obtained this status as the beneficiary of a family-based visa petition filed by his U.S. citizen-parent. *Id.* Morrar filed his application for naturalization on November 27, 2006. Defs. SMF ¶ 4. The application is under review and investigation pending until his FBI background check has been completed. Defs. SMF ¶¶ 4, 15.

Morrar filed this complaint approximately one year after his application for citizenship, and he complains that he has yet to be scheduled for his interview with CIS. Cmpl. ¶ 10. Morrar seeks an order from this court requiring CIS to adjudicate his application without further delay despite the fact that his FBI background check has not been completed. Cmpl. "Demand for Relief" at 2.

A lawful permanent resident bears the burden of proving eligibility to receive the privilege of being naturalized as a United States citizen by establishing that he or she meets all the statutory requirements for naturalization, which include knowledge of English and civics, residency, and good moral character. *See* 8 U.S.C. §§ 1427(a), 1427(e); 8 U.S.C. § 1429; 8 C.F.R. §§ 316.5, 316.10. Any doubts are resolved against the applicant and in favor of the government. *See INS v. Pangilinan*, 486 U.S. 875, 876 (1988). Immigration statutes and regulations provide for a specific

---

[1] "Defs. SMF ¶ __" refers to the defendants' Local Rule 56.1 statement of undisputed material facts concurrently filed with this memorandum.

process by which an application for naturalization is adjudicated: (a) the application itself; (b) an investigation and background check; (c) an examination with immigration authorities; and (d) the administration of the oath of allegiance. 8 U.S.C. §1446(a); 8 C.F.R. §335.1; *Damra v. Chertoff*, 2006 WL 1786246 (N.D. Ohio) at *1 (discussing process, including FBI fingerprint and name check). Neither the statute nor the regulations specify a particular time frame within which this process must be completed.

An excellent summary of the immigration background check process is set forth in the *Antonishin* case. 2007 WL 278841 at *1. The background checks conducted by CIS of naturalization applicants include: (a) an FBI fingerprint check; (b) a search of the Interagency Border Inspection System ("IBIS"), which contains records information "from more than 20 federal law enforcement agencies;" and (c) an FBI name check which is run against FBI investigative databases containing information that is not necessary revealed by the FBI's fingerprint check or IBIS. *Id.,* Ex. 4, ¶10. The FBI, in turn, performs the background checks at CIS' request on a "fee-for-service" basis "according to USCIS-defined standards. *Antonishin*, 2007 WL 278841 at *1. When CIS first implemented the name-check requirement in late 1997, applicant names were checked against the FBI's "main" files only. *Id.* In November 2002, CIS and the FBI agreed to expand "references" to the applicant's name in the FBI's files. *Id.* The new search criterion increased the amount of time required to complete certain name checks and has caused delays in the review process, generally. *Antonishin*, 2007 WL 278841 at *1-2.

**Argument**

I.  **Standards for Summary Judgment**

Summary judgment is appropriate if the evidence of record shows there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In this case all of the material facts are undisputed.

II. **CIS Is Statutorily Prohibited from Adjudicating Morrar's Naturalization Application until it Receives His Fbi Name Check Results.**

Under 8 U.S.C. § 1446(a), Congress requires CIS to conduct a personal investigation of applicants for naturalization. Through a funding statute passed in 1997, Congress required CIS to await the completion of FBI criminal background checks before adjudicating an application for naturalization. *See* Pub. L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448. Accordingly, in 1998, the Immigration and Naturalization Service ("INS") amended 8 C.F.R. § 335.2 to require that the CIS await the completion of the FBI investigations before conducting the initial interview of an applicant.

This is the procedure that has been followed in Morrar's case. Morrar is awaiting an interview which will be held *after* his background check has been completed. This makes this situation distinct from applicants who can invoke the jurisdictional provision of 8 U.S.C. § 1447(b) because they were interviewed more than 120 days ago. Morrar case cannot invoke this provision because he has not yet been interviewed.

The decision of the Supreme Court in *Norton v. So. Utah Wilderness Alliance*, 524 U.S. 55 (2004), disposes of both the APA and the mandamus prongs of Morrar's jurisdictional allegation. There, the Court stated that "the only agency action that can be compelled under the APA is action

legally required. This limitation appears section §706(1)'s authorization for courts to 'compel agency action *unlawfully* withheld." 524 U.S. at 63. The Court reasoned further that the APA simply extended the traditional practice, prior to its passage, of achieving judicial review through a writ of mandamus and that the mandamus remedy was normally confined to enforcement of "'a specific, unequivocal command,'" *Id*. ( *quoting ICC v. New York, N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932) and *citing Kendall v. United States ex rel. Stokes*, 12 Pet. 524, 613 (1838)("precise, definite act . . . about which [an official] had no discretion whatsoever"). The Court added that section 706(1) also speaks of agency action which is "unreasonably delayed," the essential allegation in this case, 524 U.S. at 63 n.1. However, "a delay cannot be unreasonable with respect to action that is not required." *Id*. Thus, a claim under section 706(1) can go forward *only* "where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take," *Id*. at 64. Nor, under the Court's rationale, can a writ of mandamus issue, absent such required agency action.

In any event, the "only agency action that can be compelled under the APA is action legally required." *Norton,* 542 U.S. at 63. "No alien has the slightest right to naturalization unless all statutory requirements are complied with . . . ." *U.S. v. Ginsburg*, 243 U.S. 472, 475 (1917); *see also Federenko v. U.S.,* 449 U.S. 490, 506 (1981). The law applicable to Morrar's case *requires* CIS to take no action on his application prior to receipt of the FBI's final reports of its security background check. Because Morrar does not have a right to naturalization and it cannot be shown that the requirements for naturalization have been met, it cannot be said that defendants have a "clear nondiscretionary duty" to naturalize Morrar.

While it is true that CIS has a policy that permits requests to expedite name checks in unusual cases such as military deployment or critical medical conditions, as the court found in *Antonishin*

there is no statute or regulation that requires CIS to request expedition under any such circumstances; therefore CIS should not be compelled to do so. *Antonishin*, 2007 WL 278841 at *17. This is especially the case when the facts are outside of the parameters of CIS's policy and expediting will merely place one applicant over another for no reason other than one applicant filed a case in the district court.

**III.    There is No Duty on Behalf of the FBI to the Plaintiff to Expedite his Name Check.**

The decisions rejecting Morrar's position that there is jurisdiction to order the FBI to more quickly complete a name check in a naturalization case have been called "too numerous to reprint." *Elsayed v. Gonzales*, No. 07-cv-00709-REB-MEH, 2007 WL 2792453, at * 2, *3 (D. Col. Sept. 25, 2007) (finding "overwhelming case law that there is no jurisdiction over the FBI in name check cases"); *see also Qinghui Wang v. Gonzales*, No. 07-02272-JWL-DJW, 2008 WL 45492, at *3 (D. Kan. Jan. 2, 2008) ("Because there is no basis to exercise jurisdiction over the FBI in connection with this naturalization application, Robert S. Mueller, III, Director, Federal Bureau of Investigations (FBI), is dismissed as a defendant."); *Sinha v. Upchurch*, No. 1:07 CV 2274, 2007 WL 4322225, at *4 (N.D. Ohio Dec. 7, 2007) ("Upon review, the Court finds that it lacks jurisdiction over the FBI Defendants because they do not owe plaintiff a nondiscretionary duty to process background checks."); *Repeshchuk v. Gonzales*, No. 07-2017, 2007 WL 3275114, at *1 n.2 (D. Minn. Nov. 1, 2007) ("To the extent Plaintiff argues that the Court enjoys the authority to order the FBI to expedite a name check because it has been named a defendant in this action, he is incorrect."); *Musaad v. Mueller*, No. 1:07-CV-00149, 2007 WL 3046476, at *5 (S.D. Ohio Oct. 16, 2007) (holding it "inappropriate to issue an Order requiring the FBI to expedite the background check. First, the text of Section 1447(b) does not clearly authorize this Court to do so."); *Antonishin*, 2007 WL 2788841,

at *6 ("We conclude that plaintiffs have not stated a claim for APA relief against the FBI."); *Jihai Wang v. Chertoff*, No. 07-CV-1334 (S.D. Cal. July 27, 2007) (holding that "nothing in 8 U.S.C. § 1447(b) grants jurisdiction over anything except the petition and [US]CIS" and that "the court has *no jurisdiction* to remand with instructions *to the FBI*.") (emphasis in original); *Zhao Yan v. Mueller*, No. H-07-0313, 2007 WL 1521732, at *7 n.7, *9 (S.D. Tex. May 24, 2007) (dismissing APA claims against the FBI in a naturalization case and noting that section 1447(b) limits jurisdiction to USCIS).

As discussed above, the court can order relief under the mandamus statute or the APA *only* where the agency owes a "clear, nondiscretionary duty", *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988), or, in the context of the APA, an "action legally required." *Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004). Morrar cannot offer any legal basis to support the proposition that the FBI owes him a duty to complete his background check. The clear majority of courts that have analyzed whether such a duty exists have found that it does not. *Antonishin*, 2007 WL 2788841 at *6 (citations omitted).

Some courts have inferred such a duty from the fact that Congress prohibited CIS action to naturalize applicants without a completed FBI background check, Pub. L. No. 105-119 (discussed above) and from the fact that it authorized the FBI to establish fees for name check costs. Pub. L. No. 105-515, 104 Stat. 2101, 2112 (1990). *See e.g., Kaplan v. Chertoff*, 481 F. Supp. 2d 370 (E.D. Pa. 2007).[2] But the court in *Antonishin* correctly observed that "it is at best unclear whether Congress

---

[2] Another court in the Eastern District of Pennsylvania has recently found that CIS' interpretation of the name check requirement violated the APA's notice and comment requirement. *Mocanu v. Mueller,* 2008 WL 372459 (E.D. Pa., February 8, 2008). This finding was directly addressed and rejected by the court in *Antonishin*, 2007 WL 278841 *7-8, the court finding that CIS was interpreting the term "full criminal background check" and not creating a "new law, right or duty," *citing , Metropolitan School Dist. Of Wayne Twp., Marioun County, Ind. V. Davila,* 969 F.2d 485, 490 (7th Cir. 1992).

intended to impose any mandatory duty on the FBI" and declined to "infer such a duty based on the appropriations measures directed to a different agency." *Antonishin*, 2007 WL 2788841 at *6. Congress could have expressly imposed such a duty upon the FBI and the fact that it did not is particularly significant here, where the court may grant relief by way of mandamus or the APA only where it finds that the plaintiff is owed a "*clear*, nondiscretionary duty" or "legally required action."

Given the subject matter involved, there certainly can not be any duty for the FBI to complete a background check within a particular deadline. Accordingly, mandamus is unavailable because the FBI already is taking action and Morrar "simply wishes to force [defendants] to [act] in a more expeditious manner." *Mustafa v. Pasquerell,* No. Civ. SA 05 CA-658-XR, 2006 WL 48839, at *5 (W.D. Tex. Jan. 10, 2006) (citing *Norton v. So. Utah Wilderness Alliance,* 542 U.S. 55, 61 (2004).

It is not desirable for courts to impose arbitrary deadlines upon the FBI in naturalization cases because "[a] background check that is rushed or incomplete due to an artificial court imposed deadline would not meet the statutory and regulatory requirements of a 'full criminal background check' before the USCIS can make a determination on an application." *Shalabi*, 2006 WL 3032413, at *5.

In addition, defendants continue to address the backlog of background checks and have generally been processing the backlog on a first-in, first-out basis. Defs. SMF ¶ 25; Exhibit 7. Courts have been reluctant to find that such a process violates the undue delay standard. *Liberty Fund,* 394 F. Supp. 2d at 116-17 (denying such a claim against the Department of Labor for backlog processing of employer applications for permanent labor certifications on behalf of aliens).

### IV. Morrar Has Failed to Establish That the Delay He Has Experienced Is Unreasonable.

Even if Morrar could establish that the federal defendants have a legal obligation to expedite his naturalization application — which he cannot — Morrar's claims must also fail because he has failed to establish that any delay which he has experienced is so unreasonable that his application by law has to be moved to the front of the pack.  Cmpl. ¶¶ 1-11; *see also Telecomm. Research Action Ctr. v. FCC,* 750 F.2d 70, 80 (D.C. Cir. 1984).  The Supreme Court has recognized that "judicial deference to the Executive Branch is especially appropriate in the immigration context."  *INS v. Aguirre-Aguirre,* 526 U.S. 415, 425 (1999).  In light of their important work and the complex nature of their missions, the investigative agencies involved in this case should be given broad discretion to do their work.

The backlog of name checks applies to a small number of the overall applications for naturalization (less than 10 percent).  Exhibit 6.  In addition, defendants must use limited resources to complete the background checks required not only for plaintiff, but also for other naturalization applicants and for other individuals.  *Id*.  As a result of the increased need for background checks post-9/11, a resource strain has been placed on the FBI.  "[W]here resource allocation is the source of the delay, courts have declined to expedite action because of the impact of competing priorities." *Liberty Fund, Inc. V. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005).  Even in the face of a statutory deadline, moving some individuals to the front of the queue has not been authorized by the courts because granting such relief for one group of petitioners would simply move that group ahead of others who had also been waiting, resulting in no net gain in processing.  *See In re Barr Lab.,* 930 F.2d 72, 75 (D.C. Cir. 1991); *Mashpee Wamponoag Tribal Council, Inc. V. Norton*, 336 F.3d 1094,

1101 (D.C. Cir. 2003). Given these limited resources, the federal defendants have prioritized the processing of name checks in a reasonable and entirely legal manner consistent with the resources at their disposal. *See Liberty Fund,* 394 F. Supp. 2d at 117; *In re Barr Lab,* 930 F.2d at 75; *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1101.

Is the current system perfect? Certainly not. But perfection is not the standard that courts are to apply when addressing mandamus petitions. Instead the courts are to interfere as a last resort only in cases in which the law gives them authority to do so. Mandamus is a drastic and extraordinary remedy and courts are not to intervene merely because a plaintiff is able to critique, criticize, or Monday-morning quarterback the way the executive branch addresses this difficult and thankless task  The issue is not whether a plaintiff can suggest that there is a better way to do things. Instead the focus of the inquiry is to be whether this system has operated so unfairly towards the applicant that the courts are required by law to step in and place his case above all of the others who are waiting in order to prevent a grievous miscarriage of justice from occurring to the plaintiff.

In this case, Morrar has experienced no such injustice. The factors which have contributed to the delays in the processing of name check requests present a difficult problem that the FBI and CIS are taking concrete action to resolve. Defs. SMF ¶ 25. The inconvenience which Mohamed has experienced is shared by all of those who are waiting with him. Morrar is free to work and travel within the United States as a lawful permanent resident. The biggest reason that there are delays for citizenship is that citizenship itself is an incredible privilege and there is great demand for such a privilege. While everyone, including the federal defendants, would like the system to operate faster, gaining speed in the process should not come at the cost of subverting a system that is designed to protect our national security and other interests. Letting the system run its course in a

reasonable manner is certainly preferable to sending the message to all naturalization applicants that the only thing you have to do to skip to the front of the line is hire a lawyer and file a mandamus petition. Such a message will certainly engender an endless stream of litigation which has no foundation in immigration and administrative law.

## Conclusion

For the foregoing reasons, this court should grant summary judgment in favor of the government defendants and against plaintiff Hatem Morrar.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: s/ Pierre C. Talbert
    PIERRE C. TALBERT
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-4088

Date: May 14, 2008
    pierre.talbert@usdoj.gov